## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**WENDI A. WATSON,**

          **Plaintiff,**

                              **Case No. 3:17-cv-11734**

          **v.**                        **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

          **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Wendi A. Watson for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On November 7, 2013, Plaintiff filed an application for benefits, alleging that she has been disabled since October 11, 2013. R. 110, 122–23, 128, 204–10. Plaintiff's application was denied initially and upon reconsideration. R. 110–21, 123–37, 139–43. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 153–54. Administrative Law Judge Kenneth Ayers ("ALJ") held a hearing on December 22, 2016, at which Plaintiff, who was represented by

counsel, appeared and testified, as did a vocational expert. R. 50−109. In a decision dated March 21, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 11, 2013, Plaintiff's alleged disability onset date, through the date of that decision. R. 30−43. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 29, 2017. R. 1−3. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 2, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[1] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 23. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.*

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

*Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

3

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The administrative decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 44 years old on her alleged disability onset date. R. 41. Plaintiff met the insured status requirement of the Social Security Act through December 31, 2017. R. 32. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 11, 2013, her alleged disability onset date. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertensive cardiovascular disease, lumbosacral (low back) degenerative disc disease, status-post right knee meniscus tears with arthroscopic knee repairs, right hip trochanteric bursitis, and learning disorder and borderline intellectual functioning. *Id*. The ALJ also found that certain other claimed or diagnosed impairments were not severe: asthma, high cholesterol, obstructive sleep apnea, obesity, migraine headaches, erosive gastritis, reflux esophagitis, fibromyalgia, benign paroxysmal positional vertigo, urinary/stress incontinence, and radial carpal wrist sprain / DeQuervain's tendonitis. R. 33–34.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 34–37.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 37–41. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a supermarket cashier. R. 41.

At step five, the ALJ found that a significant number of jobs—*i.e*., approximately 25,000 jobs as an address clerk and approximately 60,000 jobs as a document preparer—

7

existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 42. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 11, 2013, her alleged disability onset date, through the date of the decision. R. *Id*.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 18; *Plaintiff Reply*, ECF No. 22. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 20.

## IV.  DISCUSSION

### A.  Step Two

Plaintiff challenges the ALJ's determination that several of Plaintiff's impairments are not severe. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 26–32; *Plaintiff's Reply*, ECF No. 22, pp. 1–4.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec*., 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ

made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

Here, the ALJ concluded that Plaintiff "has a number of impairments, which I concluded do not have more than minimal effect on the claimant's ability to do basic work activities and are thus not severe[.]" R. 33. The Court addresses in turn Plaintiff's challenges to this finding regarding her nonsevere impairments.

### 1.    Asthma

The ALJ concluded that Plaintiff's diagnosed asthma was not severe, finding that Plaintiff

> is prescribed medication. There is no evidence of any exacerbations requiring hospital care or Prednisone. Pulmonary treatment records indicate that pulmonary function studies show mild obstruction and only one acute exacerbation of asthma on April 9, 2015 (Exhibits 14F, 28F, 36F).

R. 33. Plaintiff disagrees with this finding, arguing that she was prescribed a nebulizer for her extrinsic asthma with acute exacerbation and that "[t]he need for hospital or emergency room visits are virtually eliminated when an individual has the use of a nebulizer at home." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 28; *see also Plaintiff's Reply*, ECF No. 22, p. 2. Plaintiff further complains that the ALJ "is not a medical professional and whether or not an individual

receives [sic] is a decision for plaintiff's doctor who must consider plaintiff's other medications and side effects of Prednisone." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 28.

Plaintiff's argument is not well taken. Plaintiff concedes that her asthma was controlled and did not require hospital or emergency room visits. *Id.* Moreover, Plaintiff has not identified any evidence that her asthma had more than a minimal effect on her functional abilities. *Id.*; *see also Plaintiff's Reply*, ECF No. 22, p. 2. Based on this record, substantial evidence supports the ALJ's finding that Plaintiff's asthma was not a severe impairment. *See Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 142 (3d Cir. 2020) (stating that at step two, the claimant must show that she had "(1) a medically determinable impairment 'shown by medically acceptable clinical and laboratory diagnostic techniques' (2) that meets the duration requirement and (3) which significantly limited [the claimant's] ability to perform basic work activities"); *Luna v. Comm'r of Soc. Sec.*, No. CV 14-6953, 2016 WL 3763339, at *4 (D.N.J. July 13, 2016) (affirming step two finding that the claimant's asthma was not a severe impairment where "[w]hile the record thus contains evidence of Plaintiff's asthma, Plaintiff does not point to any evidence of functional limitations resulting from that impairment. Therefore, Plaintiff has not met his burden of showing the severity of his asthma at step two") (citations omitted).

### 2.  Sleep apnea

The ALJ concluded that Plaintiff's sleep apnea was not severe, finding that she

> underwent a sleep study in January 2015, which was consistent with obstructive sleep apnea (OSA) which resolved with treatment of nasal CPAP (Exhibit 22F). Treatment records at Exhibit 14F, pg. 4 indicate that the claimant reported that she was sleeping much better, snoring less and had decreased tiredness with use of CPAP machine.

R. 33. Plaintiff challenges this finding, contending that she "still complained of an unrefreshing sleep (T. 548-578, 617-624, 625-630, 734-764, 939-955, 1090, 1133-1159 and 1243-1278.[)]"

*Plaintiff's Memorandum of Law*, ECF No. 18, p. 28; *see also Plaintiff's Reply*, ECF No. 22, p. 2 (same). However, several of the records upon which Plaintiff relies predate her sleep study in January 2015. *See* R. 548−78 (2013), 617−24 (2013), 734−64 (2011 through 2013). In addition, other records reflect that Plaintiff denied unrefreshed sleep, *see* R. 1244, reported no sleep disturbances, *see* R. 1217, and denied trouble sleeping in 2016, *see* R. 1234, 1238, 1241. Substantial evidence unquestionably supports the ALJ's conclusion Plaintiff's sleep apnea was not severe. *See id*. Moreover, even if some of Plaintiff's cited records reflect complaints of unrefreshed sleep, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec*., 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].");  *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). In any event, Plaintiff has identified no evidence reflecting that her sleep apnea had more than a minimal effect on her functional abilities. *See Plaintiff's Memorandum of Law*, ECF No. 18, p. 28; *Plaintiff's Reply*, ECF No. 22, p. 2; *see also Carter*, 805 F. App'x at 142 (stating, *inter alia*, that the claimant must show that the medically determinable impairment "significantly limited" the claimant's "ability to perform basic work activities"); *James v. Comm'r of Soc. Sec*., No. 14-CV-4218, 2015 WL 4488027, at *15 (D.N.J. July 22, 2015) (finding the ALJ's step two determination was sufficiently supported by the medical evidence where the claimant failed to

meet his burden in proving that his sleep apnea was a severe impairment where he "received a CPAP machine, but claimed that he remained unable to sleep through the night" but that "[n]o other medical evidence is provided regarding Plaintiff's sleep apnea and whether the CPAP has alleviated that condition, or how it affects his ability to work"). Substantial evidence therefore supports the ALJ's conclusion that Plaintiff's sleep apnea was nonsevere. *See id*.

### 3.    Obesity

Plaintiff next argues that the ALJ erred when he found Plaintiff's obesity to be non-severe at step two of the sequential evaluation and failed to properly evaluate her obesity in accordance with SSR 02-1p. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 29; *Plaintiff's Reply*, ECF No. 22, p. 2. Plaintiff's argument is not well taken.

Although obesity was removed as a "listed impairment" in 1999, the Court of Appeals for the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00-3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id*. "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id*. (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal,

respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.").

SSR 02-1p provides in relevant part as follows:

[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

. . . .

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function. . . .

We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is

working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. [Footnote omitted.]

However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. 57859-02. Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016)  (quoting *Jones,* 364 F.3d at 505). However, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504.

At step two, the ALJ found Plaintiff's obesity to be non-severe, reasoning as follows: "The claimant is obese. She is 61" tall and her weight is 225 pounds (BMI: 43.38) (Exhibit 35F). No treating physician has reported that obesity has had an effect on her other impairments. She ambulates normally without an assistive device." R. 33. The ALJ therefore found that Plaintiff's obesity did not impact her other impairments and did not have more than a minimal impact on her functional abilities. *Id*. The Court finds no error with the ALJ's assessment in this regard. *See Carter*, 805 F. App'x at 143 (rejecting the claimant's assertion that her medically determinable impairments were not considered in tandem with her obesity

and migraines and that SSR 02-1p requires a consideration of obesity in conjunction with her other impairments at step two because "we have found that an ALJ indirectly considered obesity if the medical records relied on were sufficient to alert her that obesity could be a factor in the severity of the impairment"); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding remand unwarranted because it would not affect the outcome of the case where the claimant "never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments" and that the claimant's "generalized response [that her weight makes it more difficult to perform certain physical tasks] is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments"); *see also Romero v. Comm'r of Soc. Sec.*, No. CV 18-16806, 2020 WL 2301444, at *2 (D.N.J. May 8, 2020) (rejecting conclusory contention that ALJ's error in failing to consider obesity at any point in decision justifies remand and noting that "the *Diaz* Court acknowledged the continuing vitality of *Rutherford*") (citations omitted); *Desorte v. Comm'r of Soc. Sec.*, No. 1:17-CV-11407, 2019 WL 1238827, at *4 (D.N.J. Mar. 18, 2019) ("[T]he absence of evidence to support the severity of an impairment provides the precise reason why the ALJ came to his succinct conclusion in his step two analysis that Plaintiff's obesity was not severe. Therefore the ALJ did not err in this regard.").

Moreover, in arguing that the ALJ failed to properly evaluate her obesity, Plaintiff does not explain why her obesity is severe nor does she identify any limitations caused by her obesity. *Plaintiff's Memorandum of Law*, ECF No. 18, at 29; *Plaintiff's Reply*, ECF No. 22, p. 2. Notably, Plaintiff did not identify obesity as a medical condition that limited her ability to work. R. 231; *see also* R. 53−54 (reflecting Plaintiff's counsel's opening statement at the

hearing, which does not mention obesity as an impairment that limits her ability to perform less than a full range of sedentary work); *Carter*, 805 F. App'x at 142–43. Nor does Plaintiff explain how further consideration of her obesity would result in a different outcome. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553. Based on this record, this Court concludes that the ALJ properly considered Plaintiff's obesity. *Carter*, 805 F. App'x at 143 ("In any event, remand to reconsider her combined impairments is not required because Carter has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities" and that the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original); *Rutherford*, 399 F.3d at 553; *Tietjen v. Berryhill*, No. CV 17-8030, 2019 WL 1238830, at *4 (D.N.J. Mar. 18, 2019) (rejecting argument that the ALJ failed to properly consider the claimant's obesity where the claimant "failed to specify how her obesity met the disability criteria contained in the SSR and how her obesity precluded her from performing sedentary work with postural and environmental limitations, as the ALJ concluded she could" and where the claimant "failed to list obesity as an illness, injury, or condition constituting a disability in her application for SSI and SSDI benefits"); *cf. Dias v. Saul*, No. 3:17CV1812, 2019 WL 4750268, at *4–5 (M.D. Pa. Sept. 30, 2019) (affirming denial of benefits where "the plaintiff's medical records are nearly devoid of references to his obesity. Plaintiff himself is unable to point to any restrictions or limitations in the medical record due to his obesity which must be

considered" and finding a single reference to pain relating to the claimant's obesity did not

show "how his obesity resulted in limitations on his ability to perform basic work activities").

### 4.    Migraine Headaches

Plaintiff next challenges the ALJ's conclusion that Plaintiff's migraine headaches were

not severe, which the ALJ addressed as follows:

> The claimant alleges migraine headaches. Treating records indicate episodic migraine headaches and she is prescribed Zofran. She reported in 2016 that she has 1-2 headaches per week (Exhibit 32F). There is no objective clinical or neurologic evidence of associated neurological findings such as auras, light sensitivity, etc., and headaches are not intractable as they respond to medication. Previous treatment records dated August 10, 2015 state that she has a history of migraine headaches since age 10 and that they are now occurring "only about once a month." "She takes Sumatriptan which is extremely helpful" (Exhibit 21F, pg. 1).

R. 33. In challenging this assessment, Plaintiff cites to evidence that she in fact complained of

light sensitivity, dizziness,[2] and vomiting. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 29–

30 (citing, *inter alia*, R. 1043, 1048, 1195, 1198); *Plaintiff's Reply*, ECF No. 22, pp. 2–3 (same).

Nevertheless, the record supports the ALJ's finding that Plaintiff's migraine headaches were "not

intractable as they respond to medication." R. 33, 1043 (from Exhibit 21F, p. 1, reflecting that

Plaintiff "takes sumatriptan which is extremely helpful. There is nausea and light sensitivity . . . .

She does throw up on occasion. However[,] the medication is quite helpful . . . . She no longer

complains of dizziness."); *see also* 1217 (reflecting treatment note from September 2016 that

"[d]ue to overall low HA [headache] frequency, a preventive medication is not necessary").

Plaintiff apparently insists that the frequency of her headaches interferes with her ability to

sustain employment. However, her assertions about the frequency of her headaches are

inconsistent and contradictory. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 29

---

[2] The Court addresses Plaintiff's complaints of dizziness and vertigo in more detail later in this decision.

(complaining that migraine headaches occur "at least two times a week"), 30 ("Plaintiff has a long history of migraine headaches, about once a month" and "Plaintiff stated that her headaches occur one to two times a month"); *Plaintiff's Reply*, ECF No. 22, pp. 2 (complaining that migraine headaches occur "at least two times a week" and that she has "a long history of migraine headaches, about once a month"), 3 (reporting that migraine headaches occur "one to two times a month" and stating that migraine headaches occur "once a month or more").[3] Moreover, Plaintiff's testimony at the administrative hearing further supports the ALJ's reliance on record evidence that she experiences migraine headaches no more than once a month. R. 33, 76, 79–80 (testifying that she experiences migraine headaches once every two months). In any event, even if the ALJ erred in finding Plaintiff's migraine headaches to be nonsevere, he nevertheless included several exertional and nonexertional limitations in the RFC, including that Plaintiff would be absent from work one day a month. R. 37. Plaintiff has not pointed to any additional limitations arising from her migraine headaches that interfere with her functional abilities and which were not accommodated by this RFC. Based on this record, any error in the ALJ's step two finding that Plaintiff's migraine headaches were not severe is harmless and does not serve as a basis to remand this action. *See Shinseki*, 556 U.S. at 409–10; *Salles*, 229 F. App'x at 145 n.2.

### 5.    Gastrointestinal Disorders

The ALJ found that Plaintiff's gastrointestinal disorders were not severe, reasoning as follows:

> The record documents that the claimant is diagnosed with erosive gastritis and reflux esophagitis. The results of endoscopic testing have been consistent with mild gastritis (Exhibit 3F, pg. 3) and mild chronic inflammation with no significant

---

[3] For the reasons discussed in more detail below, the ALJ discounted Plaintiff's subjective complaints as not fully supported by the record evidence.

> pathologic changes (Exhibit 34F). There is no evidence of obstruction and the claimant's weight has not been affected.

R. 33. Plaintiff challenges this finding, arguing that her erosive gastritis "is clearly severe" and that the medical record reflects "pathological changes" that "are significant in nature." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 30; *Plaintiff's Reply*, ECF No. 22, p. 3. However, Plaintiff does not cite to any record evidence which would support these assertions, *see id.*, or which would contradict the ALJ's reliance on record evidence that there were "no significant pathologic changes[.]" R. 33; *see also* R. 1232.

Plaintiff nevertheless insists for the first time in reply that her gastritis symptoms "would interfere with plaintiff's ability to attend work and her ability to sustain employment according to the VE testimony." *Plaintiff's Reply*, ECF No. 22, p. 3. Plaintiff's argument is not well taken. As a preliminary matter, the Court need not address arguments raised for the first time in a reply brief. See *United States v. Kolodesh*, 787 F.3d 224, 230 n.3 (3d Cir. 2015) ("In support of the arguments raised in his opening brief, Kolodesh raises several new contentions in his reply brief. Those are waived and we do not address them further."); *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); *Wright v. Comm'r of Soc. Sec.*, No. CV 15-6217, 2016 WL 5429649, at *5 (D.N.J. Sept. 27, 2016) (refusing to consider newly-raised argument in the reply brief and citing *Aiellos v. Zisa*, No. 09-3076, 2009 WL 3486301, at *1 (D.N.J. Oct. 20, 2009) ("It is hornbook law that arguments raised for the first time in a reply brief are waived[.]")). Even if the Court were to consider Plaintiff's new argument, it is nevertheless unavailing. Plaintiff's argument in this regard is simply speculative; she neither cites to any supporting record evidence nor identifies how any specific gastric symptom interferes with her functional abilities. *See Plaintiff's Reply*, ECF No. 22, p. 3. Substantial

19

evidence therefore supports the ALJ's step two finding that Plaintiff's gastritis was not a severe impairment. *Cf. Carter*, 805 F. App'x at 142 (stating, *inter alia*, that the claimant must show that the medically determinable impairment "significantly limited" the claimant's "ability to perform basic work activities").

### 6.      Fibromyalgia

Plaintiff next challenges the ALJ's determination that her fibromyalgia was not a medically determinable severe impairment. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 31; *Plaintiff's Reply*, ECF No. 22, p. 3. Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. Under SSR 12-2p, a claimant can establish fibromyalgia as a severe medically determinable impairment by presenting "appropriate medical evidence" that satisfies one of the two sets of criteria for the diagnosis, based on criteria established by the American College of Rheumatology ("ACR"): the 1990 ACR Criteria for the Classification of Fibromyalgia (the "1990 Criteria"),[4] or the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria").[5] *Id.* "Appropriate medical evidence" includes a physician's

---

[4] Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least eleven positive tender points bilaterally both above and below the waist on physical examination; and (3) *"[e]vidence that other disorders that could cause the symptoms or signs were excluded*. Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." *Id.* (emphasis added).

[5] Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]*vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring condition were excluded*[.]" *Id.* (emphasis added). Symptoms or signs include "somatic symptoms," including the following: muscle pain, irritable bowel syndrome, fatigue or tiredness,

diagnosis along with documentation that the physician has "reviewed the person's medical history and conducted a physical exam." *Id*. "Conclusory statements by a medical provider that a patient suffers from fibromyalgia are insufficient to meet a claimant's burden at step two for establishing a medically determinable impairment." *Fox v. Comm'r of Soc. Sec.*, No. 1:19-CV-04879, 2020 WL 1888251, at *5 (D.N.J. Apr. 16, 2020).

Once fibromyalgia is determined to be a medically determinable impairment, an ALJ must then evaluate "the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p. At step two, an ALJ considers whether the fibromyalgia is "severe" and considers "those symptom(s) in deciding whether the person's impairment(s) is severe. If the person's pain or other symptoms cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities, [an ALJ] will find that the person has a severe impairment(s)." *Id*.

Here, the ALJ concluded at step two that Plaintiff "has complained of symptoms, which have not been associated with a medically determinable severe impairment[,]" including fibromyalgia:

> In 2015, based on the claimant's complaints of multiple joint pain, she was diagnosed with fibromyalgia (Exhibit 25F) and she underwent a rheumatologic examination in September 2016 and diagnosed with fibromyalgia (Exhibit 35F).

---

thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id*. Some co-occurring conditions may include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id*.

> Both physicians reported multiple tender points but they did not specify the number and areas of tender points nor did they appropriately outline/delineate clinical findings of repeated manifestations of six or more fibromyalgia symptoms or co-concurring conditions as required SSR 12-2p.

R. 33. Substantial evidence supports the ALJ's determination in this regard. As the ALJ observed, Plaintiff's examination revealed "Multiple Fibromyalgia tender points," but did not establish that Plaintiff had "at least eleven positive tender points bilaterally both above and below the waist[,]" as required by SSR 12-2p. Similarly, the record does not establish that Plaintiff had the requisite "repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions[.]" SSR 12-2p; *see also* R. 1111–16; 1243–66. As the Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, pp. 19–20, Plaintiff complained of joint pain, numbness, swelling, dry mouth, and sleep disturbance in February 2015 and "anxiety" was noted, R. 1115–16, but only joint pain and sleep disturbance were noted in August 2015, R. 1111. In September 2016, Plaintiff complained of pain and numbness, R. 1243, as well as dry mouth, shortness of breath, and lower extremity swelling, but she denied having other issues, including, *inter alia*, fatigue, unrefreshed sleep, headaches, myalgias, joint swelling, and morning stiffness, R. 1244. In October 2016, Plaintiff reported joint pain, R. 1263, but she denied other symptoms, R. 1264. Moreover, Plaintiff has cited to no evidence that other disorders that could have causec her symptoms were excluded, as is required under SSR 12-2p. *See Friedman v. Berryhill*, No. CV 18-9446, 2019 WL 1418132, at \*9–10 (D.N.J. Mar. 29, 2019) (finding that the ALJ's conclusion that the claimant failed to satisfy all the criteria under SSR 12-2p, because, *inter alia*, "the medical record failed to include documentation which excluded 'other disorders that cause similar symptoms to fibromyalgia' ") (citations omitted) (remanding on other grounds); *Haruch v. Berryhill*, No. CV 17-0773, 2018 WL 3785406, at \*3 (E.D. Pa. Aug. 8, 2018) (agreeing with the ALJ that the claimant's

22

fibromyalgia was not a medically determinable impairment where, *inter alia*, "Plaintiff presented no evidence to preclude the possibility that her symptoms were caused by another disorder").

Plaintiff nevertheless complains that "[i]t is unfair and unsupported for the ALJ to ignore the findings of a rheumatologist and place his layman's opinion over that of a trained medical specialist and dismiss laboratory and clinical findings." *Plaintiff's Reply*, ECF No. 22, p. 3. This argument is likewise unavailing. A requirement that Plaintiff meet the requirements of SSR 12-2p is not tantamount to favoring a layman's opinion over that of a medical professional; the ALJ simply assessed the evidence under the appropriate standard.

Plaintiff also contends for the first time in reply that the ALJ could have secured additional evidence from Plaintiff's rheumatologist. *Plaintiff's Reply*, ECF No. 22, p. 3. This argument ignores the fact that it is Plaintiff who bears the burden of proof at step two. *See Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). As Plaintiff herself concedes, *Plaintiff's Reply*, ECF No. 22, p. 3, her attorney could have sought to remedy any failure of proof, but did not do so.

In any event, even if the ALJ erred in finding that Plaintiff's fibromyalgia was not a medically determinable severe impairment, any such error is harmless. Plaintiff does not explain how fibromyalgia limited her ability to work to an extent greater than the RFC found by the ALJ, nor does she explain how further consideration of her fibromyalgia would result in a different outcome. *See Shinseki*, 556 U.S. at 409–10. For all these reasons, substantial evidence supports the ALJ's consideration of Plaintiff's fibromyalgia at step two.

### 7.   Rheumatoid arthritis

Plaintiff next complains that "rheumatoid arthritis was found by plaintiff's rheumatologist yet, the Administrative Law Judge again dismisses as non severe plaintiff's rheumatoid arthritis which has caused multiple joint degenerations." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 31. However, Plaintiff provides no citation to the record for this conclusory assertion. *See id.*; *see also Plaintiff's Reply*, ECF No. 22, p. 3. "Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position." *Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020); *see also id.* ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Moreover, Plaintiff does not explain how a positive ANA establishes either a diagnosis of rheumatoid arthritis or the severity of such a diagnosis. The ALJ specifically considered that Plaintiff tested ANA positive, "but rheumatologist records at Exhibit 35F indicate that this test was non-conclusive and there is no evidence of a related rheumatologic related disorder i.e. lupus." R. 34. As earlier discussed, Plaintiff does not provide a contrary citation to the record establishing a diagnosis of rheumatoid arthritis. In any event, "diagnoses alone are insufficient to establish their severity at Step Two." *Salles*, 229 F. App'x at 145. Plaintiff has not explained how a diagnosis of rheumatoid arthritis significantly limited her ability to perform basic work activities. *Id.*; *Carter*, 805 F. App'x at 142. For these reasons, Plaintiff's argument based on a

24

failure to find rheumatoid arthritis as a medically determinable severe impairment does not serve

as a basis to remand this action.

### 8.    Vertigo

The ALJ also considered Plaintiff's complaints of dizziness, which he found were not

associated with a medically determinable severe impairment, noting that treatment records, R.

1043–53 (Exhibit 21F),

> report that brain MRI scan and EEG tracings were normal. The results of video
> electronystagmogram suggested BPPV (benign paroxysmal positional vertigo).
> Follow-up examination in August 2015 states that she no longer complained of
> dizziness. There is no further evidence for treatment for vertigo, which apparently
> resolved.

R. 33–34. Plaintiff challenges this finding, complaining that her "vertigo would not be found on

either of these two tests [MRI scan and EEG], because it was felt her vertigo may be a result of

her migraine syndrome." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 31 (arguing further

that testing revealed the presence of nystagmus and emesis and was consistent with BPPV).

Plaintiff also argues in reply that, "[s]ince Defendant failed to discuss this in its Brief, it appears

that defendant agrees with plaintiff's position." *Plaintiff's Reply*, ECF No. 22, p. 4.

Plaintiff's arguments are not well taken. Although Plaintiff is correct that Defendant did

not specifically address her arguments about vertigo, Defendant did note Plaintiff's complaints

of dizziness and pointed out that those complaints had resolved after diagnostic testing and that

her headache symptoms improved with medication. *Defendant's Brief Pursuant to Local Civil

Rule 9.1*, ECF No. 20, pp. 4–5. In any event, Plaintiff has not persuaded this Court that

remanding on this issue would lead to a different result. As set forth above, Plaintiff simply

insists that the ALJ should have found her vertigo severe but does not address the ALJ's finding

that there was no additional evidence for treatment for vertigo after August 2015 and that her

vertigo therefore had apparently resolved. *See generally Plaintiff's Memorandum of Law*, ECF No. 18; *Plaintiff's Reply*, ECF No. 22. Similarly, Plaintiff does not explain how her vertigo significantly limited her functional abilities. *See id*. For all these reasons, substantial evidence supports the ALJ's treatment of vertigo at step two and does not serve as a basis for remanding this action. *See Carter*, 805 F. App'x at 142; *Salles*, 229 F. App'x at 145.

### 9. Urinary/Stress incontinence

The ALJ noted that Plaintiff "is prescribed medication for urinary/stress incontinence (Exhibit 37F) but there is no evidence that it has resulted in any limitations." R. 34. Plaintiff challenges this finding, arguing that "[a]t the very least, it would cause a need for more than a normal amount of bathroom breaks which would have more than a minimal effect on her ability to stay on task." *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 31−32; *see also Plaintiff's Reply*, ECF No. 22, pp. 3−4 (same). Notably, however, Plaintiff provides no record citation to support this assertion, nor does she explain how this condition significantly impaired her ability to engage in work activities. *See generally id*.; *cf. Alamo v. Comm'r of Soc. Sec*., No. 13-3847, 2014 WL 4354033, at *5 (D.N.J. Sept. 3, 2014) ("Although Plaintiff assigns error to ALJ Dunn's conclusion, she has offered no citation to the record nor presented any further evidence before this Court that negates Dr. Savidas' report."). Moreover, Plaintiff reported in April 2016 that this condition "[s]omewhat [i]mproved" on medication and that she voided one to three times per day and zero to one time at night. R. 1192. Considering this record, the Court finds that the ALJ's consideration of Plaintiff's stress/urinary incontinence at step two is supported by substantial evidence.

### 10.      Right wrist tendonitis/Tremors

At step two, the ALJ considered Plaintiff's complaints of right wrist and thumb pain as

well as tremors, but concluded that these conditions were not severe, reasoning as follows:

> The claimant complained of right wrist and thumb pain in December 2014, which
> was diagnosed as radio carpal wrist sprain/De Quervain's tendonitis. X-ray findings
> were normal. There were no positive neurological findings or mechanical
> symptoms on examination. She was prescribed over-the-counter Motrin, Aleve or
> Tylenol (Exhibit 20F [R. 1031–42]). There is no evidence of continued treatment
> or chronic complaints. The evidence does not substantiate that this resulted in a
> severe impairment, which lasted 12 months or more.

> The claimant has complained of tremors in her left arm. However, these are of
> unknown etiology (Exhibit 35F) and as the record stands, there is no medically
> determinable, severe associated impairment.

R. 34. In challenging this finding, Plaintiff relies on the same evidence from December 2014

cited by the ALJ, repeating reports of her complaints as well as her diagnosis of DeQuervain's

tendonitis and treatment consisting of a thumb splint, physical therapy, and injections. *Plaintiff's*

*Memorandum of Law*, ECF No. 18, p. 32 (citing R. 1031–42); *Plaintiff's Reply*, ECF No. 22, p. 4

(same). However, as discussed earlier, a diagnosis alone does not establish an impairment's

severity at step two. *Salles*, 229 F. App'x at 145. Further, simply repeating this medical evidence

with no accompanying explanation is insufficient to establish severity on this record. *See Padgett*

*v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018)

("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand

what argument Plaintiff has made here. Plaintiff has done no more than thrown down a few

pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does

not assemble arguments for a party from fragments."). To the extent that Plaintiff asks the Court

to reweigh this evidence that provides substantial support for the ALJ's determination on this

issue, the Court cannot do so. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir.

2011). For all these reasons, substantial evidence supports the ALJ's consideration of Plaintiff's tendonitis and tremors at step two.

Finally, even if the ALJ erred by not finding Plaintiff's asthma, sleep apnea, obesity, migraine headaches, gastritis, fibromyalgia, rheumatoid arthritis, vertigo stress / urinary incontinence, and right wrist tendonitis and tremors to be severe at step two, any such error would be harmless. As set forth above, the ALJ ultimately found in Plaintiff's favor at step two, finding several of her other impairments to be severe. R. 32. The ALJ went on to consider Plaintiff's impairments through the rest of the five-step sequential evaluation process. R. 34–41. Accordingly, any error in finding other impairments to be nonsevere at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

### B.     ALJ's Alleged Misstatements

Plaintiff contends that the ALJ misstated the evidence and that the action should therefore be remanded. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 32–34; *Plaintiff's Reply*, ECF No. 22, pp. 4–6. The Court addresses these contentions in turn.

#### 1.     Ability to ambulate

At step three, the ALJ noted that Plaintiff "ambulates evenly and regularly (Exhibit 30F [R. 1195–1206]) and does not require an assistive device." R. 34. Plaintiff complains that the ALJ erred in relying on an isolated statement when making this finding. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 32–33; *Plaintiff's Reply*, ECF No. 22, p. 4. This Court disagrees. The ALJ's finding in this regard was not based on "an isolated statement" but instead was based on at least three references in the record to Plaintiff's ability to ambulate evenly and regularly, *i.e.*, on April 5, 2016 (R. 1202), June 20, 2016 (R. 1200), and September 19, 2016 (R. 1197). In

28

addition, the ALJ noted that a "neurological examination performed in September 2016 reports

that the claimant is neurologically intact. Her gait/posture was described as normal and it was

reported that she was able to heel/toe walk. Reflexes and sensation were normal (Exhibit 32F

[1215–18, dated September 26, 2016])." R. 39; *see also* R. 1217 (reflecting a normal tandem

gait). Substantial evidence, not simply an isolated statement, unquestionably supports the ALJ's

finding that Plaintiff ambulates evenly and regularly. *See also* R. 1002 (October 2015), 1008

(April 2015).

> Plaintiff nevertheless contends that
>
> [c]linical findings also reveal an irregular uneven antalgic gait on the right (T.
> 448-547), gait was antalgic (T. 625-630), walks with an antalgic gait, tilted to the
> left when standing and sitting (T. 694-699), gait and station revealed an antalgic
> gait on the right ambulating with a crutch (T. 729-730) and her tandem gait was
> noted to be poor (T. 1043-1053).

*Plaintiff's Memorandum of Law*, ECF No. 18, p. 33. However, as the Commissioner points out,

*Defendant's Brief Pursuant to Local Civil R. 9.1*, ECF No. 20, p. 22, many of these references to

an antalgic gait are dated prior to Plaintiff's alleged disability onset date of October 11, 2013.

*See* R. 449 (December 2010), 454 (January 2011), 457 (same), 460 (February 2011), 694-99

(May 2011), 730 (referring to ambulation in 2011). Although Plaintiff cites to two findings of

antalgic gait in 2013 (R. 626, 629) and one instance where her tandem gait was rated as poor in

February 2015 (R. 1049), there is nevertheless substantial evidence supporting the ALJ's finding

in this regard. This Court must therefore affirm the ALJ's decision notwithstanding contrary

evidence. *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Hatton v. Comm'r of Soc. Sec.*

*Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon

situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

### 2.    Evidence of lower extremity neurological deficits

At step three, the ALJ also noted that "there is no clinical evidence of any lower extremity neurological deficits (Exhibits 23F [R. 1091−1108], 33F [1219−28])." R. 34. Plaintiff challenges this finding, contending that a January 2017 MRI of the lumbar spine and a May 2017 EMG/NCV study contradict the ALJ's statement in this regard and reveal lower extremity neurological deficits. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 32−33 (citing R. 13−18). However, as Plaintiff later apparently concedes, *see Plaintiff's Reply*, ECF No. 22, p. 4, this evidence was not before the ALJ when he issued his decision on March 21, 2017.[6]  It is axiomatic "that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Id*. at 593; *see also* 42 U.S.C. § 405(g) (providing, *inter alia*, that the court may remand the case to the Commissioner and "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding").

---

[6] Plaintiff's counsel first submitted this evidence to the Appeals Council on July 5, 2017. R. 6−22.

Plaintiff has not requested a Sentence Six remand for consideration of this evidence;

indeed, she implicitly rejects that action. *See Plaintiff's Reply*, ECF No. 22, p. 5 (contending that

Defendant's argument that she "has waived her right to file a motion for remand under sentence

6 is incorrect and *irrelevant*") (emphasis added). Instead, in reply, Plaintiff relies on evidence

dating from 2011 and 2012 and insists that the ALJ erred in finding that there was no clinical

evidence of any lower extremity neurological deficits:

> While this may be true [that the 2017 MRI and EMG/NCV study were not before
> the ALJ], there was evidence before the Court, notably, an EMG of June 14, 2011
> shows evidence of right L5-S1 radiculopathy. The impression was a right sided
> lumbar disc herniation at L4-5 and central lumbar disc herniation at L5-S1. A
> microdiskectomy at L4-5 and L5-S1 on the right was recommended. Further, a
> March 3, 2011 lumbar spine MRI revealed a broad based right paracentral disc
> herniation indenting the thecal sac, centrally and to the right at L4-L5 and a broad
> based central disc herniation indenting the thecal sac at L5-S1. Plaintiff had a
> lumbar puncture on April 11, 2012. Bilateral back pain was deemed to be moderate
> to severe bilaterally. She was given physical therapy and microdiskectomy at L4-5
> and L5-S1 was suggested (T. 347-447).

*Id*. at 4−5; *see also Plaintiff's Memorandum of Law*, ECF No. 18, pp. 5, 8−9, 33−34 (recounting

same evidence). Plaintiff does not explain how a finding of radiculopathy alone establishes

neurological deficits. *See id*.; *cf. Purvis v. Saul*, No. 19-CV-4036, 2020 WL 6821079, at *13

(N.D. Iowa June 26, 2020), *report and recommendation adopted*, No. C19-4036, 2020 WL

4700719 (N.D. Iowa Aug. 13, 2020) (affirming denial of benefits where, *inter alia*, the claimant

had "an L4 radiculopathy" but "did not appear uncomfortable or in any acute distress, his spine

had a normal range of motion, he had a normal gait and stance" and "although examination of

Claimant's lumbar spine revealed general discomfort above his fusion, it was not overwhelming

and his musculoskeletal strength and sensation in the lower extremities was grossly intact with

no deficits"); *Robert M. v. Berryhill*, No. 6:18-CV-00559, 2019 WL 3337902, at *6 (D. Or. July

25, 2019) (affirming denial of benefits where, *inter alia*, the ALJ found "that examinations

showed no neurological deficits and intact strength" and where the claimant "had right C6 radiculopathy in March 2016 but was neurologically intact, and his waxing and waning symptoms were managed conservatively"); *Stugart v. Berryhill*, No. No. 4:17-CV-708, 2018 WL 3469043, at \*2, n.1 (M.D. Pa. June 22, 2018) ("Radiculopathy is a condition due to a compressed nerve in the spine that *can* cause pain, numbness, tingling, or weakness along the course of the nerve.") (emphasis added); Neurology, *Stedmans Medical Dictionary* 601070 (2014) (defining neurology as "[t]he branch of medical science concerned with the various nervous systems (central, peripheral, and autonomic), plus the neuromuscular junction and muscle, and their disorders"); *id.* at 748650 (defining radiculopathy as a "[d]isorder of the spinal nerve roots").

Even assuming that the evidence referred to by Plaintiff, which predates her alleged disability onset date, is tantamount to a finding of neurological deficit, any misstatement by the ALJ finding no evidence of such deficits is, at most, harmless. The ALJ did not expressly mention the June 2011 EMG, but he assigned "partial weight" to the initial reviewing state agency physician, Dr. David Schneider, who did specifically consider this 2011 evidence and who nevertheless opined that Plaintiff was able to perform medium exertion. RFC. R. 40, 114. The ALJ also expressly referred to and relied on treatment records that showed no neurological deficits. R. 34, 39 (citing, *inter alia*, Exhibits 30F, R. 1195−1206, and 32F, R. 1215−18, which reflect, among other things, Plaintiff's ability to ambulate evenly and regularly and to heel/toe walk and finding that she was neurologically intact with a normal gait/posture, reflexes, and sensation). Moreover, Plaintiff continued to work after the June 2011 EMG upon which she now relies. R. 32, 35−36, 38−39. In short, this Court concludes that the ALJ's finding in this regard is supported by substantial evidence. Alternatively, this Court concludes that any misstatement by

the ALJ in this regard amounts to, at most, harmless error that does not require remand. *See Shinseki*, 556 U.S. at 409−10.

### 3.   Orthopedic impairments

At step four, the ALJ noted that, in 2012, Plaintiff underwent a lumbosacral epidural steroid injection and lumbar puncture. R. 38. The ALJ then stated that "[t]here is no evidence of further specific orthopedic treatment such as steroid injections, physical therapy, etc., until the claimant sustained injuries in a motor vehicle accident on September 24, 2015." R. 39. Challenging this statement, Plaintiff contends that the ALJ misstated the evidence, thereby "minimiz[ing] plaintiff's orthopaedic impairments particularly her cervical and lumbar spine impairments[.]" *Plaintiff's Memorandum of Law*, ECF No. 18, p. 33. Plaintiff argues that "medical records from October 24, 2013 to July 10, 2014 document, *inter alia*, severe low back pain, with knee pain requiring two surgeries, her gait was antalgic and she was told to have surgery but she does not want to have this done. Instead, she was treated by Dr. Lombardi and pain management including epidural injections (T. 625-630)." *Id*. However, as the Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, p. 23, the record upon which Plaintiff relies (*i.e.*, December 2013 notes from Igor Sobol, M.D., Ph.D.) merely recounts treatment previously administered by Joseph S. Lombardi, M.D., prior to Plaintiff's alleged disability onset date. *See* R. 627 ("She has been followed with Dr. Lombardi and pain management regarding lumbar sacral pain. She had epidural injections. She was recommended surgery. She had a motor vehicle accident in May 2011."). Notably, it does not appear that Dr. Lombardi treated Plaintiff after April 2012. *See* R. 693 (June 7, 2013, letter from Dr. Lombardi summarizing treatment and findings and stating, *inter alia*, that he "last examined the patient on April 4, 2012"). Plaintiff points to no treatment or findings that contradict the ALJ's statement

33

that Plaintiff did not receive specific orthopedic treatment such as steroid injections, physical

therapy, *etc.*, until she sustained injuries in a motor vehicle accident in September 2015. *Id.*

(citing 617–24 (reflecting consultative examiner's report dated December 27, 2013), 694–99

(May 2011), 700–28 (May 2011 to March 2012), 1091–1108 (October 2015 to January 2016),

1219–28 (March 2016 to October 2016)).

### C. Subjective Statements

Plaintiff also appears to challenge the ALJ's evaluation of her subjective complaints,

disputing several of the ALJ's findings or factors considered. *Plaintiff's Memorandum of Law*,

ECF No. 18, pp. 34–37; *Plaintiff's Reply*, ECF No. 22, pp. 6–7. Plaintiff's arguments are not

well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the

ALJ "must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, an ALJ invested with "wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[7]

Here, the ALJ followed this two-step evaluation process.  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting

---

[7]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 38. The ALJ also detailed years of record evidence, reflecting, *inter alia*, Plaintiff's multiple car accidents; history of surgical procedures in 2011 and 2012; her ability to work as a cashier after two of those car accidents until the supermarket where she worked closed; evidence from 2016 revealing an even and regular gait with an ability to walk heel/toe and a normal posture, reflexes, and sensation as well as being neurologically intact; independent in ambulation with no evidence of related neurological deficits; conservative care, including physical therapy at the time of the administrative hearing; hypertensive cardiovascular disease controlled with medication; normal stress test results; EKG tracings with minor T wave changes of equivocal significance; no problem caring for her own personal needs except needing assistance putting on shoes and socks; her ability to prepare easy meals, do laundry, take out trash, shop, pay bills, drive a car independently, live with her boyfriend, and care for a pet cat; the fact that she worked for twenty-six years (from April 1987 to October 2013) as a supermarket cashier; her own reports that she gets along with others, including authority figures; her statement that, although she does not follow through well and does not understand directions well, she does finish what she starts and handles stress "good[.]" R. 38–41.

Plaintiff criticizes the ALJ's consideration of her daily activities, apparently as an attack on the ALJ's evaluation of her subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 34–35; *Plaintiff's Reply*, ECF No. 22, p. 7. Plaintiff specifically contends that "none of these activities would rise to the level of substantial gainful activity nor could plaintiff perform them on a sustained basis." *Id.* To the contrary, however, the ALJ did not find that Plaintiff's daily activities constituted substantial gainful activity. *See generally* R. 39–40. Moreover,

36

Plaintiff cites to no evidence establishing that she did not perform these activities on a "sustained basis." *See Plaintiff's Memorandum of Law*, ECF No. 18, pp. 34–35; *Plaintiff's Reply*, ECF No. 22, p. 7. Instead, Plaintiff herself stated that she performed many of these activities on a daily basis. R. 242 (reporting in her Function Report that, every day, she made simple meals, took out the trash, performed a little cleaning, and did laundry). Finally, it was not improper for the ALJ to take these activities into account when assessing Plaintiff's subjective complaints and testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) (providing that the ALJ may consider a claimant's daily activities); *see also Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Loneker v. Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at *4 (D.N.J. Nov. 5, 2018) ("The ALJ's decision is consistent with the Third Circuit's recognition that "[a]lthough 'any statements of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them," particularly where such statements are undermined by evidence of a more active lifestyle.") (quoting *Chandler v. Comm'r*, 667 F.3d 356, 363 (3d Cir. 2011)).

Plaintiff next complains that the ALJ failed to consider the side effects of Plaintiff's pain medication. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 35. In support of her argument, Plaintiff simply cites to SSR 03-2p, which cautions only that pain medication "*may* impact a claimant's ability to maintain attention and concentration[.]" *Id.* (emphasis added). Plaintiff points to no evidence in the record establishing any limitations caused by her medications. *See id.*; *see also Grandillo v. Barnhart*, 105 F. App'x 415, 419 (3d Cir. 2004) (holding that where a claimant has "not cited to any medical evidence demonstrating that she suffered adverse side effects from her medication . . . her own conclusory statements [do] not establish a sufficient

ongoing struggle with any side-effects to undermine the ALJ's determination").Rather, Plaintiff

reported no side effects from her medication. R. 267. Accordingly, the ALJ's failure to consider

any—otherwise unidentified—related side effects of Plaintiff's medication or related functional

limitations does not serve to undermine the ALJ's consideration of Plaintiff's subjective

statements. *See Pucciarello v. Colvin*, No. CV 15-3719, 2016 WL 3912851, at *16–17 (D.N.J.

July 19, 2016) ("Plaintiff here has failed to present 'evidence of any functional limitation' related

to his alleged drowsiness and clouded mental focus and, therefore, the ALJ's implicit decision to

discount these claimed side-effects is supported by substantial evidence.") (citations omitted); *cf.*

*Morris v. Comm'r of Soc. Sec.*, No. CV 18-17531, 2020 WL 529204, at *5 (D.N.J. Jan. 31, 2020)

("Plaintiff does not cite any evidence documenting medication side effects or functional

limitations that are not accounted for in her RFC.").

Plaintiff also repeats her complaint that the ALJ misstated the evidence when he said that

there was no evidence of additional orthopedic treatment until her car accident in September

2015. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 35. However, for the reasons discussed

above, the ALJ did not misstate the evidence in this regard.

Plaintiff next challenges the ALJ's decision to assign "little weight" to the opinion of

Joseph Riggi, D.O. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 35; *Plaintiff's Reply*, ECF

No. 22, pp. 6−7. In assessing Dr. Riggi's opinions, the ALJ reasoned as follows:

> Dr. Riggi, a primary care physician at Avenel Iselin Medical Group, opined at
> Exhibit 3F, pages 1-2, that the claimant is disabled secondary to back pain, anxiety
> and dyspnea. Little weight is accorded this opinion as Dr. Riggi did not provide a
> functional assessment to explain this opinion and an opinion of disability is
> reserved to the Commissioner of the Social Security Administration in relation to
> the claimant's Social Security disability claim.

R. 41. The Court finds no error in the ALJ's decision to assign little weight to this opinion. *See*

*Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can

perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20

C.F.R. § 404.1527(d)); *See Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir.

2015) ("[S]ubstantial evidence supports the ALJ's conclusion that Dr. Frank's opinion was not

well-supported, as Dr. Frank failed to reference any objective medical evidence supporting his

statements of disability or articulate any specific functional limitations suffered by [the

claimant].");  *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ

was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work

because the opinion related to the ultimate issue of disability—an issue reserved exclusively to

the Commissioner."); *Nixon v. Comm'r of Soc. Sec.*, No. CV 18-1631, 2019 WL 4748058, at *1

(W.D. Pa. Sept. 30, 2019) ("Thus, as Dr. Tran's opinion did not include specific functional

limitations and merely opined as to Plaintiff's limited employability, the Court finds that the ALJ

did not err in giving little weight to that opinion in his analysis.").

Plaintiff goes on to complain that the ALJ emphasized that Plaintiff stopped working

only because the store closed but he "fails to comment" on the rest of her related testimony.

*Plaintiff's Memorandum of Law*, ECF No. 18, pp. 35–36; *Plaintiff's Reply*, ECF No. 22, pp. 6–7.

Plaintiff explained that she wanted to work, but the job offered to her was in a store located in

Newark, New Jersey. *Id*. Plaintiff specifically testified that she did not take that job because she

did not want to drive to Newark by herself. R. 61. However, the ALJ's failure to specifically

discuss this testimony is surely harmless where Plaintiff points to no evidence connecting her

aversion to driving alone with any impairment and where she otherwise admitted that she drove

independently, a fact that the ALJ expressly acknowledged. R. 39–40, 62, 243, 251. Plaintiff

also testified that, when she tried to find other local work, she was unable to do so because she

cannot read or write well. R. 70–71. But the ALJ specifically considered her testimony that she

has difficulty reading and writing. R. 40. In any event, the fact that Plaintiff stopped working only when her store closed was but one of many factors that the ALJ considered when assessing Plaintiff's subjective statements.

Under these circumstances, this Court finds that the ALJ has sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record. His evaluation of Plaintiff's subjective complaints is therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports").

### D.   RFC

Plaintiff complains that the ALJ's RFC determination is conclusory and not supported by substantial evidence. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 37–40; *Plaintiff's Reply*, ECF No. 24, p. 7. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. § 404.1545.(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC

40

determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for lifting/carrying 10 lbs. occasionally and less than 10 lbs. frequently; sitting for 6 hrs, standing/walking for 2 hrs in an 8 hour workday; push/pull as much as can lift/carry; she can operate foot controls with right foot occasionally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, never kneel, never crouch, never crawl. She is limited to hearing and understanding simple oral instructions and to communicating simple information. The claimant can never work at unprotected heights, never around moving mechanical parts; she can work in humidity and wetness occasionally, in dust, odors, fumes and pulmonary irritants occasionally, in extreme cold occasionally, in extreme heat occasionally, in vibration occasionally. She is limited to performing simple, routine and repetitive tasks, limited to simple work-related decisions; she can frequently respond appropriately to supervisors, occasionally respond appropriately to coworkers and never respond appropriately to public decisions [sic]. The claimant's time off task can be accommodated by normal breaks and she would be absent from work 1 day a month.

R. 37. Plaintiff contends that the RFC determination was "conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 38. To the contrary, the ALJ detailed in several single-

41

spaced pages years of record evidence and testimony in making this determination. R. 37−41.
For example, the ALJ specifically considered evidence reflecting, *inter alia*, , Plaintiff's multiple
car accidents; history of surgical procedures in 2011 and 2012; her ability to work as a cashier
after two of the car accidents until the supermarket where she worked closed; evidence from
2016 revealing an even and regular gait with an ability to walk heel/toe and a normal posture,
reflexes, and sensation as well as being neurologically intact; an ability to ambulate
independently with no evidence of related neurological deficits; conservative care, including
physical therapy at the time of the administrative hearing; hypertensive cardiovascular disease
controlled with medication; normal stress test results; EKG tracings with minor T wave changes
of equivocal significance; difficulty reading and writing; no problem taking care of her own
personal needs except needing assistance putting on shoes and socks; an ability to prepare easy
meals, do laundry, take out trash, shop, pay bills, drive a car independently, live with her
boyfriend, and care for a pet cat; a history of working for twenty-six years (from April 1987 to
October 2013) as a supermarket cashier; Plaintiff's own reports that she gets along with others,
including authority figures; and Plaintiff's report that, although she does not follow through well
and does not understand directions well, she does finish what she starts and handles stress
"good[.]" R. 38−41. The record unquestionably contains substantial evidence to support this
RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186
F.3d at 429.

Plaintiff nevertheless challenges this determination, contending that the ALJ "fail[ed] to
focus on" her "ability to sustain work activities." *Plaintiff's Memorandum of Law*, ECF No. 18,
p. 38. However, the ALJ specifically considered Plaintiff's ability to perform mental and

physical work activities on a sustained basis, finding that she would not be off task outside of normal breaks and would be absent from work only one day per month. R. 31, 27, 40.

Plaintiff cites at length the medical record, but provides little to no discussion of the significance of that record. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 39–40; *Plaintiff's Reply*, ECF No. 22, p. 7. Notably, Plaintiff has not identified what, if any, limitations allegedly flow from her conditions or impairments, *i.e.*, joint pain and swelling in feet, ankles, hands, and knees. *See generally id.*; *see also Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone . . . does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Nor has Plaintiff explained why the RFC fails to accommodate any of these unidentified physical or mental limitations or how remanding this action would lead to a different outcome. *See Plaintiff's Memorandum of Law*, ECF No. 18, pp. 39–40; *Plaintiff's Reply*, ECF No. 22, p. 7; *see also Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553. The Court will not construct Plaintiff's arguments for her, nor is this Court authorized to reweigh the evidence. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018).

Plaintiff further complains that the ALJ did not mention her "migraine headaches which were found by the Administrative Law Judge [to] occur once a month[.]" *Plaintiff's Memorandum of Law*, ECF No. 18, p. 40. Plaintiff is mistaken. In formulating the RFC, the ALJ specifically considered Plaintiff's testimony regarding her migraines. R. 37. The RFC also permits Plaintiff to be absent from work one day a month. *Id.* To the extent that Plaintiff suggests

that this Court reconsider this evidence, the Court is "not permitted to reweigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

Plaintiff also complains that the fact that she is "in therapy twice a week was not mentioned to the vocational expert (T. 101)[.]" *Plaintiff's Memorandum of Law*, ECF No. 18, p. 40. However, it is not clear what Plaintiff intends by this assertion; she offers no accompanying explanation. *See id.* If she intends to suggest that the ALJ should have included in the RFC a requirement that Plaintiff be provided more time or days off to accommodate her physical therapy, that argument is not well taken. The ALJ specifically noted that Plaintiff attends physical therapy twice a week when crafting the RFC. *See* R. 38−39. Plaintiff has cited to no evidence that attending physical therapy two times per week prevents or otherwise interferes with her ability to engage in substantial gainful activity. The ALJ therefore committed no error in failing to include additional absences from work to attend physical therapy because the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554.

In short, the Court concludes that the ALJ's RFC determination is consistent with the record evidence and enjoys substantial support in the record.

### E.     Step Five

Plaintiff complains that the ALJ denied her the opportunity to cross-examine the vocational expert and failed to schedule a promised supplemental administrative hearing. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 40. The Commissioner, however, disagrees that the ALJ "promised" a supplemental hearing and argues that Plaintiff waived her right to cross-examine the vocational expert. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, pp. 29−30.  The Commissioner's arguments are well taken.

Although the vocational expert testified briefly at the administrative hearing, R. 105, the ALJ had previously propounded written interrogatories to the vocational expert, based on the written record, because the vocational expert's "computer [was] not working." R. 106. The ALJ explained that he would send the vocational expert's responses to those interrogatories to Plaintiff's counsel,[8] who would then determine whether a supplemental hearing was necessary. R. 108 ("I'll send them to your attorney and then at that point your attorney will look at them and decide whether he thinks that the responses are good enough or whether we need to come back for another hearing and then we'll have to work with scheduling another hearing, if we're going to have another hearing."). On December 27, 2016, the ALJ provided the vocational expert's interrogatory responses to Plaintiff's counsel. R. 330–43. The ALJ specifically advised that Plaintiff could request a supplemental hearing and an opportunity to question witnesses, including the vocational expert. R. 342. In response, Plaintiff's attorney advised the ALJ that he had reviewed the vocational expert's interrogatory responses and did not object to them: "You indicated that you proposed to admit those answers as Exhibit 17E. Please note that I do not have any objection to the answers of [vocational expert] Ms. Anderson nor to the inclusion of Exhibit 17E." R. 345. Based on this record, the Court agrees with the Commissioner that Plaintiff waived her right to a supplemental hearing and to cross-examine the vocational expert. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017) (defining waiver as "'the intentional relinquishment or abandonment of a known right'") (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

---

[8] Plaintiff is now represented by a different attorney.

Accordingly, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports his determination in this regard.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 19, 2021                    _____*s/Norah McCann King*_____
                                                    NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE